[No. B190771. Second Dist., Div. Four. Mar. 26, 2007.]

JAMES R. GIULIANO III, Plaintiff and Respondent, v.
INLAND EMPIRE PERSONNEL, INC., et al., Defendants and Appellants.

1278

COUNSEL

Beck, De Corso, Daly, Kreindler & Harris, Charles L. Kreindler and Edward E. Alon for Defendants and Appellants.

Dempsey & Johnson, Michael D. Dempsey and Arlene M. Turinchak for Plaintiff and Respondent.

## OPINION

**SUZUKAWA, J.**—In this breach of contract action, defendant employer appeals from the denial of its motion to compel arbitration pursuant to plaintiff's employment contract. Defendant contends that plaintiff's right to a judicial forum for his unpaid wages claim under Labor Code section 229 is preempted by section 2 of the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA), which mandates the enforcement of arbitration clauses in contracts involving interstate commerce. (*Perry v. Thomas* (1987) 482 U.S. 483, 490–492 [96 L.Ed.2d 426, 107 S.Ct. 2520].) Defendant also argues that plaintiff's "garden variety" breach of contract action is not subject to the minimum requirements for arbitration set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), which applies to unwaivable claims that are "carefully tethered to statutory or constitutional provisions" (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 508 [30 Cal.Rptr.3d 787, 115 P.3d 68] (*Boghos*)), such as discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) or wrongful discharge in violation of public policy (i.e., claims under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]). We reverse the order denying the motion to compel arbitration.

## BACKGROUND

In 2003, plaintiff James R. Giuliano III moved from Indiana to California to become executive vice-president and chief financial officer of defendant Inland Empire Personnel, Inc., and six related entities (collectively, Empire).[1]

---

[1] The six related entities are defendants Empire Land, LLC; Empire Partners, Inc.; Empire Commercial Real Estate, L.P.; Empire Capital, LLC; Aviat Homes, L.P.; and Empire Global Holdings, L.P.

After Giuliano left Empire in 2005, he filed the present action against Empire claiming that a $5 million to $8 million profit-sharing bonus and $500,000 severance payment were owed under his employment agreement. The complaint alleged causes of action for: (1) statutory wages under Labor Code section 200 et seq. based on the nonpayment of the bonus and severance payment allegedly due under the contract; (2) breach of contract for failure to pay the bonus and severance payment; and (3) declaratory relief to invalidate the employment contract's arbitration clauses and requirement that he sign a waiver and release in order to receive a severance payment. The complaint also alleged a fourth cause of action for interference with contract against Frontier Homes, LLC, and Frontier Homebuilders, Inc., which were dismissed from the action and are not parties to this appeal.

In this appeal, Empire seeks to enforce the following arbitration clauses contained in the (1) employment agreement that Giuliano had signed and initialed upon accepting the offer of employment; (2) the employee handbook that was mentioned in the employment contract;[2] and (3) the employee bonus plan that Giuliano had signed upon accepting the offer of employment.[3]

---

[2] In the employment contract, Giuliano agreed to be bound by the terms of the employee handbook, as that handbook might be amended from time to time. The employee handbook that was in effect when Giuliano was hired (and stayed in effect until it was replaced by the Apr. 1, 2003 handbook) contained an arbitration clause that stated: "A dispute of any kind regarding your employment . . . (whether it be brought by you or us), as well as any claim that . . . your employment was terminated for a reason prohibited by contract, statute or public policy, shall be resolved by final and binding arbitration that is heard by an arbitrator who is experienced in employment law and is selected in accordance with the then prevailing Employment Rules of the American Arbitration Association (AAA). . . . Such arbitration shall be the sole remedy for you and us as to any such dispute . . . , and shall be in lieu of any rights you or we may otherwise have had to have a court or jury decide the disputed issues. . . . Furthermore, the costs for such arbitration will initially be paid entirely by us, with our right to obtain reimbursement of nominal filing fee costs that are approximately the same as you would have had to incur had you brought an action in the courts. Should either party pursue any other legal or administrative action against the other regarding your employment or this Handbook, the responding party shall be entitled to compel arbitration and recover its costs, expenses, and attorneys' fees incurred as a result of such action."

The April 1, 2003 employee handbook that was in effect during all but the last two and a half months of Giuliano's employment stated that the arbitration clause applied to both the employee and the company, including its affiliated entities and/or employees, and applied to any disputes that the company might have against the employee. The April 1, 2003 handbook incorporated the rules "then applicable to employment disputes of the Judicial Arbitration and Mediation Services ('JAMS') group, and the law that is then applicable to the specific claim that is being made by either party."

[3] The bonus plan contained the following arbitration clause: *"Any dispute between you and the Company, and/or its employees or related entities, including but not limited to any claims of harassment or discrimination in violation of any federal or state law, or an other claim involving your compensation, the attached Plan, your employment or its termination (excepting only Workers' Compensation or Unemployment claims) shall be resolved by final and binding arbitration that is heard by an arbitrator who is experienced in employment law*

The employment agreement contained the following arbitration clause that was initialed by Giuliano: "**As a material part of the consideration for you becoming an employee of our Company, we have each agreed that if [*sic*] any dispute or claim of any kind or amount (including without limitation, wrongful termination, discrimination, harassment, Title VII claims, ADA and ADEA claims, personal injuries and contractual issues that arise in relation to your employment or its termination; other than a Workers' Compensation or Unemployment Claim), shall be arbitrated to a final and binding resolution, in lieu of any court or jury action.** No appeal will be available to either party. Such arbitration is to be conducted in San Bernardino County, or any other mutually agreeable location, before a qualified member of the American Arbitration Association (AAA), and shall be conducted in accordance with AAA's then prevailing rules regarding employment disputes, including those relating to the conduct of discovery in preparation for such hearing." In addition, the employment agreement contained the following arbitration provision, which was signed by Giuliano: "**THE TERMS AND CONDITIONS CONTAINED WITHIN THIS LETTER (INCLUDING WITHOUT LIMITATION, THE RESTRICTIONS ON MY RIGHTS TO SEEK A JURY OR COURT TRIAL FOR THOSE EMPLOYMENT RELATED ISSUES SET OUT IN THE ARBITRATION PROVISION OF THIS OFFER LETTER [SEE PARAGRAPH SEVEN (7)]), ACCURATELY REFLECT THOSE TERMS AND CONDITIONS I'VE AGREED SHALL CONTROL MY EMPLOYMENT WITH THE INLAND EMPIRE PERSONNEL, INC.**"

The complaint alleged that the employment contract's arbitration clause was invalid and unenforceable under Labor Code section 229,[4] which provides a judicial forum for statutory wage claims. Empire moved to compel arbitration, contending that Labor Code section 229 was preempted by

---

*and is selected in accordance with the then prevailing rules of the American Arbitration Association ('AAA'). Such binding arbitration shall be the sole remedy for any such dispute, and shall be in lieu of any rights you may otherwise have had to have a court or jury decide the disputed issues. By your signature to this letter, you do expressly waive any and all rights to have your disputes heard by a court or jury, and to appeal any decision that may be rendered by the arbitrator. You further agree that this agreement to arbitrate shall survive the expiration of this particular Plan and calendar year, and/or any changes in your employment, position or job title, and shall not be terminated, except by a writing signed by you and the Company's President.*"

[4] "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement." (Lab. Code, § 229.)

section 2 of the FAA, which mandates the enforcement of arbitration agreements in contracts involving interstate commerce. In support of its motion, Empire submitted the declaration of its executive vice-president and chief legal officer Larry Day, who attested that: (1) Empire engages in interstate commerce by acquiring, developing, and selling residential and commercial properties in both California and Arizona, and by shipping supplies from other states to California and Arizona; and (2) Giuliano actively assisted Empire's multistate activities by negotiating loans with a bank that is headquartered outside of California. In anticipation of Giuliano's claim that the arbitration clause is unenforceable under *Armendariz*, Empire argued that the arbitration clause was not invalid because both parties were "on equal footing, with equal rights to arbitration by a neutral arbiter in accordance with the rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, both of which comply with the *Armendariz* standard."

Giuliano argued in opposition to the motion that: (1) because the Frontier defendants (who were dismissed after the motion to compel arbitration was denied) were not parties to the employment agreement, the Frontier defendants may not be compelled to arbitrate and, under Code of Civil Procedure section 1281.2, subdivision (c), the court may refuse to enforce an arbitration agreement when, due to common issues of law or fact in a pending action with a third party, there is a possibility of conflicting rulings; (2) Empire had waived its right to compel arbitration against the six related Empire defendants (Empire Land, LLC; Empire Partners, Inc.; Empire Commercial Real Estate, L.P.; Empire Capital, LLC; Aviat Homes, L.P.; and Empire Global Holdings, L.P.) by arguing inconsistently in another lawsuit between Empire and former Empire executive Jeff Gault, "that Inland Empire Personnel, Inc., is the only one of the Empire companies that can be compelled to arbitrate"; (3) Giuliano's employment contract did not involve interstate commerce because Empire does not operate in two states—its principal offices are in California, the employment agreement was signed in California, Giuliano worked in California, Giuliano paid state income taxes in California, and Giuliano was terminated in California; and (4) Giuliano's employment agreement is unconscionable because it failed to "advise employees that California public policy provides them with extensive protections in wage disputes that would be taken away by an undisclosed federal statute."

Giuliano did not oppose the motion on the grounds that the arbitration agreement was unconscionable or unenforceable under *Armendariz*, or that the arbitration agreement was ambiguous as to which parties were bound by

the agreement; both of those grounds were nevertheless cited by the trial court in its order denying the motion. The trial court denied Empire's motion to compel arbitration on the grounds that: (1) the arbitration clause was "vague and unintelligible" as to which parties were bound by the agreement; (2) the FAA did not preempt Giuliano's statutory wage claim because his employment contract did not involve interstate commerce; and (3) the arbitration clause was unconscionable and invalid under *Armendariz*. After the trial court denied Empire's motion for reconsideration, Empire appealed. (Code Civ. Proc., § 1294, subd. (a) [order denying a motion to compel arbitration is appealable].)

## DISCUSSION

■ " 'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]' (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)" (*Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 789 [4 Cal.Rptr.3d 179].) Code of Civil Procedure sections 1281.2 and 1290.2 provide for the resolution of motions to compel arbitration in summary proceedings in which "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.] No jury trial is available for a petition to compel arbitration. [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) "We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277 [16 Cal.Rptr.3d 296].)

### I. *Federal Preemption*

■ The FAA provides that a written arbitration clause in "*a contract evidencing a transaction involving commerce* . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2, italics added.) In *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376 [25 Cal.Rptr.3d 540, 107 P.3d 217], the Supreme Court stated that "[t]o ensure that arbitration agreements are enforced according to their terms, the FAA preempts all state laws that apply *of their own force* to limit those agreements against the parties' will or to withdraw the power to enforce them. (See, e.g., *Perry v. Thomas*[, *supra*,] 482 U.S. 483, 490–491 . . . [FAA preempted California statute that rendered private agreements to arbitrate wage collection claims unenforceable by requiring judicial forum for resolution of those claims]; [*Southland Corp. v.*] *Keating* [(1984)] 465 U.S. [1,] 16 & fn. 10 [79 L.Ed.2d 1, 104 S.Ct. 852] [FAA preempted California statute that rendered agreements to arbitrate certain franchise claims unenforceable by requiring judicial forum for resolution of those claims].) Although state law may be applied to regulate contracts, including arbitration clauses, ' "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally[,]" [citation]' courts may not invalidate arbitration agreements under state law contract principles applicable *only* to arbitration provisions, and that therefore disfavor such contracts, or single them out for 'suspect status.' (*Doctor's Associates*[, *Inc. v. Casarotto* (1996)] 517 U.S. [681,] 686–687 [134 L.Ed.2d 902, 116 S.Ct. 1652].) For example, the high court found that a Montana statute that made arbitration clauses unenforceable unless the contract provided notice of the arbitration clause ' "in underlined capital letters on the first page of the contract" ' directly conflicted with the FAA; the state law conditioned the enforceability of arbitration agreements on a notice requirement not applicable to contracts generally. (*Doctor's Associates, supra*, 517 U.S. at pp. 684, 687–688.) Only 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2' of the FAA. (*Doctor's Associates, supra*, 517 U.S. at p. 687.)" (*Cronus Investments, Inc. v. Concierge Services, supra*, at p. 385.)

The purpose of the FAA was " ' "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," . . . and to place such agreements " 'upon the same footing as other contracts[.]' " . . . While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." ' (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478 [103 L.Ed.2d 488, 109 S.Ct. 1248], citations omitted.) 'The Arbitration Act thus establishes a

"federal policy favoring arbitration," . . . requiring that "we rigorously enforce agreements to arbitrate." ' (*Shearson/American Express, Inc.* v. *McMahon* (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 107 S.Ct. 2332].)" (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1117–1118 [88 Cal.Rptr.2d 664], fn. omitted (*Lagatree*).)

▓ The arbitration clause before us is governed by the FAA if, as Empire contends, the agreement constitutes a contract "evidencing a transaction involving commerce." (9 U.S.C. § 2.) In deciding this issue, we must broadly construe the phrase, "evidencing a transaction involving commerce," because the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. Its general applicability reflects that '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered. . . .' [Citation.] We have accordingly held that these agreements must be 'rigorously enforce[d].' [Citations.]" (*Perry v. Thomas, supra*, 482 U.S. at p. 490.) In determining whether the employment agreement involved interstate commerce, the parties' subjective intent is not the determining factor. "[E]videncing a transaction involving commerce" (9 U.S.C. § 2) simply means that "the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 281 [130 L.Ed.2d 753, 115 S.Ct. 834] (*Allied-Bruce*).)

*Allied-Bruce* involved an arbitration clause contained in a residential pest control contract between an Alabama customer and a local Allied-Bruce Terminix franchise. Allied-Bruce sought to enforce the arbitration clause when it was sued by the customer and others for allegedly poor service. The Alabama courts denied arbitration under a state statute that invalidated written predispute arbitration agreements. The United States Supreme Court reversed, finding that the Alabama statute was preempted by section 2 of the FAA. The Supreme Court rejected the position that a transaction does not involve interstate commerce under the FAA unless the contracting parties subjectively contemplated a substantial interstate commerce connection when they made their agreement. On the contrary, the Supreme Court held that a contract involves commerce under section 2 of the FAA simply if the transaction, in fact, involves interstate commerce. The Supreme Court stated that the interstate nature of the pest control contract in *Allied-Bruce* was undisputed because of "the multistate nature of Terminix and Allied-Bruce" and the use of house-repairing materials that "came from outside Alabama." (*Allied-Bruce, supra*, 513 U.S. at p. 282.)

Similarly, the interstate nature of Giuliano's employment was undisputed, notwithstanding Giuliano's contention to the contrary, and we therefore decide the issue as a matter of law. (*Nyulassy v. Lockheed Martin Corp., supra,* 120 Cal.App.4th at p. 1277.) Significantly, Giuliano alleged in his complaint that Empire was engaged in "business throughout Arizona and California."[5] Moreover, in his declaration, Giuliano admitted that he had "attend[ed] meetings, site visits and grand opening ribbon cuttings" in other states. Giuliano presented no evidence to the contrary and failed to dispute that he had engaged "in activity that affected interstate commerce" by negotiating "multi-million dollar loan agreements" with a bank that was headquartered in another state.

In his respondent's brief, Giuliano argues that his declaration created a disputed issue of fact regarding the interstate nature of his employment contract and that we must defer to the trial court's resolution of that factual dispute in his favor. We disagree. At best, Giuliano's declaration showed only that most of his time was spent physically working in California, which, on this record, is insufficient to create a reasonable inference that his work had no connection with interstate commerce. The record was undisputed regarding the interstate nature of Empire's activities, Giuliano's business trips outside California, and Giuliano's negotiation of business loans from out-of-state lenders. Given Empire's undisputed interstate business activities and the broad construction we must give to the phrase "evidencing a transaction involving commerce" (9 U.S.C. § 2; see *Allied-Bruce, supra,* 513 U.S. at p. 277), Giuliano's declaration was legally insufficient to create a factual dispute regarding Empire's interstate activities. The record is more than sufficient under *Allied-Bruce* to support a finding, as a matter of law, that Giuliano's employment contract involved interstate commerce.[6] The fact that

---

[5] Similarly, Larry Day, Empire's executive vice-president and chief legal officer, declared that Empire and its related entities "primarily acquire, entitle, develop and sell residential and commercial property in California and Arizona. They are licensed to do business, own properties, engage in substantial marketing campaigns and enter into numerous contracts in both California and Arizona. They also regularly order materials to be shipped from other states to California and Arizona through their suppliers, vendors and subcontractors."

[6] Support for our determination can also be found in Medicare cases that have "held that a health care provider's treatment of Medicare patients, receipt of reimbursement from Medicare, and purchase of out-of-state medicines and supplies constitutes being engaged in interstate commerce for purposes of the Sherman Act. (See, e.g., *Summit Health, Ltd.* v. *Pinhas* (1991) 500 U.S. 322, 329 [114 L.Ed.2d 366, 111 S.Ct. 1842]; *BCB Anesthesia Care* v. *Passavant Mem. Area Hosp.* (7th Cir. 1994) 36 F.3d 664, 666; *Brown* v. *Our Lady of Lourdes Medical Center* (D.N.J. 1991) 767 F.Supp. 618, 626.)" (*Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646, 651 [84 Cal.Rptr.2d 76].) In *Erickson,* the evidence was undisputed that an insurer had contracted with the federal government to provide insurance to Medicare patients and had entered into interstate contracts with vendors and service providers operating on a national basis. Based on this evidence, the appellate court held that the insurer

the employment contract did not mention interstate commerce is irrelevant because, under *Allied-Bruce*, a contract involves commerce under section 2 of the FAA simply if the transaction, in fact, involves interstate commerce, regardless of the parties' subjective intent when they signed the agreement.

Giuliano's reliance on *Hill v. Rent-A-Center, Inc.* (11th Cir. 2005) 398 F.3d 1286 is misplaced. *Hill* involved another provision in the FAA that "exempts from coverage any arbitration agreement contained in 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' 9 U.S.C. § 1." (398 F.3d at p. 1288.) The issue in *Hill* was whether the plaintiff, an account manager whose duties included delivering goods to customers in another state, was exempt from coverage under the FAA as an employee engaged in interstate commerce. The Eleventh Circuit found the exemption was inapplicable, stating "that since Hill is not a transportation industry worker, he is not exempt from the mandatory arbitration provisions of the FAA." (398 F.3d at p. 1288.) In this case, there is nothing in the record to show that Giuliano was a transportation industry worker who was exempt from coverage under section 1 of the FAA. Accordingly, *Hill* does not assist Giuliano's position.

II.   Armendariz

Empire contends that the arbitration clause contained in Giuliano's employment agreement is not governed by the requirements set forth in *Armendariz, supra*, 24 Cal.4th 83. We agree.

■   In *Boghos, supra*, 36 Cal.4th at pages 506–507, the Supreme Court explained that *Armendariz* applies to unwaivable claims that arise under the FEHA or are tied to a fundamental public policy: "In *Armendariz*, . . . we set out the conditions under which an employer can lawfully require its employees to arbitrate claims arising under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). Through the FEHA, we reasoned, the Legislature created substantive and procedural rights not just for the benefit of individuals but also for public purposes; accordingly, those statutory rights are unwaivable under Civil Code sections 1668 and 3513. (*Armendariz*, at pp. 100–101.) To ensure that employer-mandated arbitration agreements would not become vehicles for the waiver of FEHA rights, we held that such agreements are enforceable only if they provide for neutral arbitrators, more than minimal discovery, a written award, and all of the types of relief that would otherwise be available in court and, in addition, ' "*do*[] *not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.*" '

---

was engaged in interstate commerce within the meaning of the FAA and that the arbitration clause in its insurance policy was therefore preempted by the FAA. (*Erickson*, at p. 651.)

(*Armendariz*, at p. 102, italics added, quoting *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 323 U.S. App.D.C. 133 [105 F.3d 1465, 1482].) We borrowed these requirements from an analogous federal decision, *Cole*, which had in turn formulated them to ensure that employer-mandated arbitration agreements did not violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). [¶] In *Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979], we extended *Armendariz, supra*, 24 Cal.4th 83, and applied its requirements to employer-mandated arbitration of tort claims for wrongful discharge in violation of public policy (i.e., claims under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]). Justifying the extension, we reasoned that *Tameny* claims, even though not statutory, are nevertheless 'almost by definition unwaivable' (*Little*, at p. 1077) because they seek to enforce public policies that are carefully tethered to fundamental policies delineated in constitutional or statutory provisions (*ibid.*; [citations]). To extend the *Armendariz* requirements to *Tameny* claims was also consistent with the object of those requirements, which is 'to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum.' (*Little*, at p. 1080.)" (Fns. & citation omitted.)

Empire contends that *Armendariz* does not apply to Giuliano's "garden variety" breach of contract action that involves neither FEHA nor *Tameny* claims. It is well established that the right to a jury trial and judicial forum can be waived in an employment contract. As was noted in *Lagatree, supra*, 74 Cal.App.4th 1105, arbitration clauses are generally enforceable, "[a]nd if a right or duty can be waived by agreement, it is not rooted in a substantial public policy, absent other factors to the contrary." (*Id.* at pp. 1121–1122.) Further, the court said that in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647] the United States Supreme Court held that "a predispute arbitration agreement is not invalid merely because it is imposed as a condition of employment. By directing that claims of economic coercion be decided on a case-by-case basis, the court in *Gilmer* necessarily concluded that compulsory arbitration agreements are not invalid per se. Put another way, under *Gilmer*, the mandatory nature of an arbitration agreement does not, by itself, render the agreement unenforceable." (*Lagatree*, at pp. 1122–1123.)

In this case, Giuliano argues that his statutory wage claim is an unwaivable *Tameny* claim because "[t]he right to be paid wages earned is part of the public policy of the State of California and is not waivable." But Giuliano's contract claim for a $5 million to $8 million bonus and a $500,000 severance payment is distinguishable from the statutory overtime or minimum wage claims that were at issue in the cases cited by Giuliano. (Citing *Brooklyn Bank v. O'Neil* (1945) 324 U.S. 697, 706–707 [89 L.Ed. 1296, 65 S.Ct. 895]

[employee's statutory right to liquidated damages for an employer's violation of overtime compensation laws under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) may not be waived]; *Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728 [67 L.Ed.2d 641, 101 S.Ct. 1437] [employee's right to a judicial forum for his minimum wage law violation claim under the Fair Labor Standards Act may not be waived notwithstanding the denial of his claim in arbitration under a collective bargaining agreement]; *Association of Community Organizations for Reform Now v. Department of Industrial Relations* (1995) 41 Cal.App.4th 298, 300 [48 Cal.Rptr.2d 486] [California's minimum wage laws are not unconstitutional as applied to the plaintiff, a political advocacy group].) We distinguish the above cases because they involved unwaivable statutory claims for federally mandated overtime and minimum wage payments, whereas this case involves a breach of contract claim for a multimillion-dollar bonus and severance payment.

Giuliano argues that Empire is bound by the trial court's adverse ruling under *Armendariz* because, having argued below that the arbitration clause is not unconscionable under *Armendariz*, Empire is precluded by the doctrine of invited error from attacking that ruling. The doctrine of invited error does not apply, however, because Empire did not request an erroneous ruling. "Under the doctrine of 'invited error' a party cannot successfully take advantage of error committed by the court at his request. Thus, on appeal a litigant cannot object to the admission of incompetent evidence offered by him. [Citation.] He cannot complain of error in instructions requested by him. [Citations.] Nor can he challenge a finding of the trial court made at his instance. [Citations.]" (*Jentick v. Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343].) In this case, the doctrine of invited error does not apply because Empire never asked the trial court to invalidate the arbitration agreement under *Armendariz*, but argued against doing so. Empire's attorney argued below that "as far as *Armendariz* is concerned, I believe they are talking statutory claims involving public policy, number 1. So I don't believe it applies to this contract."[7] After the trial court stated, "I think [*Armendariz*] does apply," Empire's counsel said, "If [*Armendariz*] does apply, there is nothing in the arbitration agreements which go against any of the *Armendariz*" requirements.

*Armendariz* does not apply to this case because it is not based on the FEHA or a fundamental public policy that is tied to a constitutional or statutory provision. (*Boghos, supra,* 36 Cal.4th at pp. 506–507; *Parker v. McCaw* (2005) 125 Cal.App.4th 1494, 1507 [24 Cal.Rptr.3d 55] [*Armendariz*

---

[7] As the above quotation from the reporter's transcript shows, contrary to Giuliano's erroneous assertion in his response brief that Empire failed to raise the issue below, Empire did argue in the trial court that the employment contract was not subject to *Armendariz*'s requirements.

does not apply to the plaintiff's non-FEHA claims].) Accordingly, we need not consider whether the arbitration clause complies with *Armendariz.*

III. *Ambiguity*

Empire contends that the arbitration clause is not ambiguous and that the related entities are subject to arbitration. We agree.

Determining who is bound by the arbitration clause is a legal question. (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265] [in general, "the meaning of contract language . . . is a legal question, not a factual question"].) In this case, the employment contract identified the employer as "our Company's affiliated Empire entities (collectively, the 'Companies')." Giuliano obviously believed that the affiliated Empire entities were parties to his employment contract or he would not have sued "the Companies" for breach of contract. Although Giuliano states in his respondent's brief that the declaratory relief claim asked the court to invalidate the agreement that "if made at all, was made with only one of the seven Empire Companies," the complaint does not distinguish among the related entities but collectively refers to all of "the Companies" as the employer. In fact, Giuliano conceded in his declaration that he was employed by all of the related entities, stating that he "contracted to be chief financial officer of the affiliated Empire Companies." As Giuliano explained in his declaration, the related entities are the actual "operating entities" that "have operations, provide goods and services and receive revenue for those goods and services," whereas Inland Empire Personnel Company, Inc., "is a pass-through entity with no operations or revenue of its own. It is funded entirely by contributions from Empire Companies" and "exists solely to receive these contributions, make payroll for the Empire Companies that have operations, revenue and employees, and administer and pay for employee benefits. No work is done for Inland Empire. All the work is done for the operating entities such as the other Empire defendants named in the complaint."

On this record, the only reasonable inference to be drawn is that all of the affiliated Empire entities are bound by the employment contract's arbitration clause. Even though the employment contract's arbitration clause referred to the Empire Companies in the singular as "our Company," the only rational reading of the contract is that the term "our Company" collectively referred to all of the related Empire defendants that were sued by Giuliano for allegedly breaching the employment contract. The parties' intention to bind all of the related Empire defendants was further demonstrated by the arbitration clauses contained in the employee handbook and bonus plan, which were both mentioned in the employment contract. The arbitration clauses in those documents specifically stated that the related Empire entities were bound by the arbitration clauses contained therein.

## IV. *Unconscionability*

In support of the order denying arbitration, Giuliano contends that the arbitration clause in the various agreements should be stricken as a vague, unintelligible, unconscionable, and invalid contract of adhesion. We disagree.

■ "Civil Code section 1670.5, subdivision (a) provides, in pertinent part, that a contract clause found to be unconscionable is unenforceable, unless the court severs the clause or so limits its application as to avoid any unconscionable result. Under this statute, a court may not refuse to enforce a contract clause unless it determines that the clause is both procedurally and substantively unconscionable. (*Armendariz, supra,* 24 Cal.4th at p. 114; *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486–487 [186 Cal.Rptr. 114] . . . .)" (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 87 [7 Cal.Rptr.3d 267], fn. omitted.) Civil Code section 1670.5, subdivision (a) states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

■ Arbitration clauses in employment contracts have been upheld despite claims that the clauses were unconscionable because they were presented as part of an adhesion contract on a take-it-or-leave-it basis. (*Lagatree, supra,* 74 Cal.App.4th at pp. 1125–1126, citing *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212–1213 [78 Cal.Rptr.2d 533]; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667 [53 Cal.Rptr.2d 515]; *Spellman v. Securities, Annuities & Ins. Services, Inc.* (1992) 8 Cal.App.4th 452 [10 Cal.Rptr.2d 427].) In finding the arbitration clause in *Lagatree* was not unconscionable, the court noted that, "as *Gilmer* and its progeny make clear, the compulsory nature of a predispute arbitration agreement does not render the agreement unenforceable on grounds of coercion or for lack of voluntariness." (74 Cal.App.4th at p. 1129.)

Giuliano also contends that the arbitration clause is procedurally unconscionable because it does not provide for discovery, does not require a written arbitration award, and does not require the employer to pay for fees and costs unique to arbitration. These are procedural requirements set forth in *Armendariz.* As we have concluded that *Armendariz* does not apply to this case, Giuliano's claim of procedural unconscionability fails.

## DISPOSITION

The order denying the motion to compel arbitration is reversed and the trial court is directed on remand to enter a new order granting the motion in its entirety. Defendants are awarded their costs on appeal.

Epstein, P. J., and Willhite, J., concurred.