Filed 12/17/14  Sandoval v. Medway Plastics CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ABEL SANDOVAL et al., | B252412 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC513170) |
| v. | |
| MEDWAY PLASTICS CORPORATION et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary Ann Murphy, Judge.  Reversed and remanded with directions.

Payne & Fears, Daniel F. Fears, Laura Fleming and Philip K. Lem for Defendants and Appellants.

The Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiffs and Respondents.

_____

# INTRODUCTION

Medway Plastics Corporation (Medway) and Maria Rodriguez appeal from an order denying their motion to compel respondents Abel Sandoval and Jesus Nolasco to arbitrate their employment-related claims against appellants. Appellants contend the trial court erred in determining that the arbitration agreements (Agreements) between the parties were unenforceable. For the reasons stated below, we determine that a substantively unconscionable fee-shifting provision in the Agreements is severable. After severing that provision, we conclude the Agreements are enforceable. Accordingly, we reverse and remand for further proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 25, 2013, respondents filed a complaint for damages against appellants, alleging claims for intentional infliction of emotional distress, breach of contract, and age and racial/national discrimination and retaliation under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Respondents alleged they had been employed by Medway for over 14 years, had been supervised by Rodriguez (a Medway employee), and were wrongfully terminated due to their age (over 40 years old), their race/nationality (Hispanic) and their limited ability to speak English (which allegedly had no effect on their work performance).

In response to the complaint, appellants moved, under Code of Civil Procedure section 1281.1 et seq., for an order dismissing respondents' complaint and compelling respondents to arbitrate the claims in their complaint. In the motion to compel arbitration, appellants contended that respondents had agreed to arbitrate all disputes relating to their employment with Medway. Both respondents had signed a Spanish version of the Agreement on September 21, 2000. In

2

addition, respondent Nolasco had signed an English version of the Agreement on November 8, 2005. In support of the motion, appellants submitted copies of the signed Agreements and a copy of the 2009 JAMS (Judicial Arbitration and Mediation Services) Employment Arbitration Rules and Procedure. They also submitted a declaration by Medway's vice president, Cheryl McDaniel, authenticating the signed Agreements. McDaniel stated that employees are required, as a condition of their continued employment, to sign the Agreements, that the signed Agreements submitted with the motion were found in respondents' personnel files, and that she recognized their signatures. She also acknowledged that respondents spoke Spanish as their first language and were employed as machine operators.

The English version of the Agreement provided: "I . . . agree [in advance], as a necessary and material condition of my employment by the Company, that any issue between myself and the Company or any of its employees, agents, officers, directors or affiliates, which relates to my employment with the Company, including, but not limited to any claims of discrimination, harassment, retaliation, statutory claims, tort claims or contract claims, must be resolved exclusively through binding arbitration. I understand that this means that I am giving up significant rights, including but not limited to, the right to a jury trial. I understand that I must [make a] written [petition] for arbitration to the Company Administration within the time limits which would apply to the filing of a civil complaint in court or I will waive my right to pursue any claim. I acknowledge that I am knowingly and voluntarily waiving my right to pursue such claims in court and instead will pursue them in arbitration. I further agree that any such arbitration will be conducted using the Judicial Arbitration and Mediation Services ("JAMS"). I agree that if I file a complaint which is subject to arbitration with a

court, I will reimburse the Company's costs and attorneys' fees associated with compelling arbitration of the complaint. If any court of competent jurisdiction finds any part of this Arbitration Agreement is illegal, invalid or unenforceable, such a finding will not affect the legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will be stricken from the agreement." The Spanish version of the Agreement was substantially identical.

Respondents opposed the motion to compel arbitration. They argued (1) that there were no valid agreements to arbitrate, as the Agreements were not signed by a Medway representative; (2) that the Agreements were procedurally unconscionable, as respondents were compelled to sign the Agreements and were never provided a copy of the JAMS arbitration rules, either in English or Spanish; and (3) that the Agreements were substantively unconscionable, as they were one-sided -- forcing only employees to arbitrate all claims arising out of their employment, imposing improper fee-shifting, and failing to provide for adequate discovery on FEHA claims.

In reply, appellants argued that a signature of a Medway representative was not needed to form a valid contract between Medway and appellants. As to procedural unconscionability, appellants contended the failure to provide the JAMS rules did not render the Agreements unconscionable. They conceded that a contract of adhesion may present some procedural unconscionability, but argued that the level of unconscionability would be exceedingly low. As to substantive unconscionability, appellants argued there was none. According to appellants, the Agreements evidenced a mutual agreement to arbitrate, based on the language in the Agreements that "any issue" relating to the employee's employment with Medway must be resolved via arbitration. On the issue of fee-shifting, appellants

argued that the fee-shifting was proper, as it applied not to the unique costs and fees of the arbitration, but only to the enforcement of the Agreement. Finally, on the issue of adequate discovery, appellants argued that the JAMS arbitration rules provided adequate discovery, as the rules permitted at least one deposition and additional depositions as determined by the arbitrator.

On October 25, 2013, the trial court denied appellants' motion for an order compelling respondents to arbitrate their claims. In its oral ruling, the court determined that the Agreements were unconscionable and unenforceable, as (1) the JAMS arbitration rules were not attached or referenced; (2) the fee-shifting provision improperly permitted an award of fees to the prevailing defendant on the FEHA claims without the requisite factual findings required under the FEHA and illegally chilled employees' access to the courts; and (3) the discovery provision in the JAMS arbitration rules provided inadequate discovery. The court declined to reform the Agreements, finding that unconscionability permeated them.

Notice of the trial court's ruling was served on October 29, 2013.

Appellants timely noticed an appeal from the order.

## DISCUSSION

### A.    *Standard of Review*

Under Code of Civil Procedure section 1281.2, a party to an arbitration agreement may petition the trial court to order the parties to the agreement to arbitrate a dispute. "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) "We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.]

5

Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277; accord, *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284.)

B.      *Existence of Agreements to Arbitrate*

Although the trial court never addressed whether the parties validly formed contracts to arbitrate employee disputes, respondents contend the court's order denying appellants' motion to compel arbitration may be affirmed on the basis that appellants failed to prove valid contracts to arbitrate existed. (See *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [appellate court may affirm a trial court's ruling "on any basis presented by the record whether or not relied upon by the trial court"].) Specifically, respondents contend no valid Agreements existed, because (1) appellants failed to prove that respondents signed the Agreements; and (2) there was no mutual intention to form a contract, as only the employees were obligated to arbitrate their claims and waive their right to jury trial. We disagree.

The trial court impliedly found that respondents signed the Agreements, as it determined that respondents were given Spanish versions of the Agreements to sign and there was no "language issue." More important, the declaration of McDaniel, was sufficient to authenticate the signed Agreements. McDaniel testified that she was familiar with Medway's business practice of requiring employees to sign Agreements, that she had located the signed Agreements in respondents' personnel files, and that she recognized respondents' signatures. In light of this uncontradicted testimony, appellants have met their burden of showing respondents signed the Agreements.

6

As to lack of mutuality, parties may validly form a contract where each party has different obligations. For example, an employer may agree to hire a worker in return for the worker's promise to arbitrate employment-related disputes. The lack of a mutual obligation to arbitrate is distinct from a mutual intention to form an agreement. The lack of mutuality in an arbitration provision of a contract does not render the contract illusory. (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 117 (*Armendariz*).) Indeed, our Supreme Court has noted that an arbitration agreement that requires only employees to arbitrate their claims may be enforceable if the employer can show a business justification for the unilateral arbitration provision. (*Id*. at pp. 117-118.) In short, appellants have shown the existence of agreements to arbitrate between the parties.[1]

C.    *Enforceability of Arbitration Agreements*

Although agreements to arbitrate existed between the parties, the trial court refused to enforce the Agreements. It denied appellants' motion to compel arbitration on the basis that the Agreements were unconscionable. In determining whether an arbitration agreement is unconscionable and unenforceable, we draw upon the following principles enunciated by our Supreme Court: "The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on "'a sliding scale.'" (*Armendariz, supra*, 24 Cal.4th at p. 114.) '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is

_____

[1]    Whether the Agreements actually lacked mutuality in the obligation to arbitrate employment-related claims is discussed in Part C.2.

7

unenforceable, and vice versa.' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).) "[P]rocedural unconscionability requires oppression or surprise. '"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Ibid.*, quoting *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1317.) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle*, *supra*, at p. 246, quoting *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213.)

1.    *Procedural Unconscionability*

The trial court found procedural unconscionability because the Agreements neither attached nor referenced the JAMS arbitration rules. Although we have held that the failure to attach arbitration rules referenced in an agreement, by itself, is insufficient to sustain a finding of procedural unconscionability (*Lane v. Francis Capital Management*, *LLC* (2014) 224 Cal.App.4th 676, 690), in this case, no arbitration rules were referenced in the Agreements. Instead, the Agreements simply stated that the arbitration would be conducted by JAMS. Even were the Agreements interpreted to provide that the JAMS arbitration rules would be used, nothing suggests that a Spanish version of the JAMS rules was easily accessible to the employees. Thus, there was an element of surprise present in this case which would support a finding of procedural unconscionability. (Cf. *ibid.* ["The failure to attach a copy of arbitration rules could be a factor supporting a finding of

8

procedural unconscionability where the failure would result in surprise to the party opposing arbitration."].)

In addition, the record shows oppression. As attested to by McDaniel, the Agreements were presented to the employees in an adhesive context -- they were required to sign the contract as a condition of continued employment. Moreover, respondents -- machine operators with limited English language skills -- do not appear to fall within the category of "sought-after employees," who would be in a position to refuse a job because of an arbitration requirement. (See *Armendariz, supra*, 24 Cal.4th at p. 115.) In short, due to the high disparity in bargaining power between Medway and respondents, the degree of procedural unconscionability was more than minimal. (Cf. *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 981 (*Dotson*) [procedural unconscionability was minimal where employee was not "an uneducated, low-wage employee without the ability to understand that he was agreeing to arbitration," but "the opposite -- a highly educated attorney, who knowingly entered into a contract containing an arbitration provision in exchange for a generous compensation and benefits package"].)

### 2. *Substantive Unconscionability*

The trial court found two provisions in the Agreements were substantively unconscionable. It determined (1) that the discovery provided for in the JAMS arbitration rules was inadequate to vindicate respondents' FEHA claims, and (2) that the fee-shifting provision in the Agreements was contrary to California law. We disagree that the Agreements improperly limited discovery. The Agreements never addressed discovery. In the absence of an express provision, the employer impliedly agreed to all discovery necessary to adequately arbitrate statutory claims. (*Armendariz, supra*, 24 Cal.4th at pp. 105-106.) Moreover, even were the JAMS arbitration rules incorporated into the Agreement, the discovery

9

provided for in JAMS arbitration rule 17 was adequate. That rule provides that the parties must produce all relevant, nonprivileged documents. In addition, "[e]ach party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery, and the burdensomeness of the request on the opposing Parties and witness."

A substantially similar discovery provision was found not unconscionable in *Dotson*. (See *Dotson*, *supra*, 181 Cal.App.4th at pp. 982-985.)[2] The *Dotson* court specifically rejected the assumption that an arbitrator would not be fair in determining whether additional depositions were necessary. (See *id*. at p. 984.) In short, the absence of an express discovery provision in the Agreements did not render it substantively unconscionable.

As to the fee-shifting provision, we conclude it is substantively unconscionable. The fee-shifting provision provides that if an employee files a complaint which a court thereafter determines is subject to arbitration, the employee will reimburse the employer for its costs and attorneys' fees incurred in

---

[2]     The discovery provision in *Dotson* provided: "'Each party shall have the right to take the deposition of one individual and any expert witness designated by the other party. Each party also shall have the right to make requests for production of documents to any party. The subpoena right specified below in Paragraph 4 ["[e]ach party shall have the right to subpoena witnesses and documents for the arbitration"] shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of need.'" (*Dotson*, *supra*, 181 Cal.App.4th at p. 982.)

10

compelling arbitration of the complaint.[3] The fee-shifting provision chills employees' access to the courts. Under the provision, an employee who successfully demonstrated the unconscionability of one or more provisions of an arbitration agreement would nevertheless be compelled to reimburse the employer if the court found the unconscionable provision(s) severable. Employees with legitimate challenges to unconscionable provisions in arbitration agreements would thus be discouraged from challenging them and could be penalized when they did, even if successful.

Moreover, the provision is one-sided, as it expressly applies only to the employee. An employee who files "a complaint which is subject to arbitration with a court" must "reimburse *the Company*'s costs and attorneys' fees associated with compelling arbitration of the complaint." (Italics added.) Therefore, the fee-shifting provision is not mutual and unfairly favors the employer. (Cf. *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, 1132 [under mutual attorney fee provision, party may recover attorney fee for successful petition to compel arbitration].) Appellants contend Civil Code section 1717 saves the provision, as it renders the provision mutual. (See Civ. Code, § 1717, subd. (a) [rendering reciprocal an otherwise unilateral contractual provision for attorneys' fees to a prevailing party "[i]n any action on a contract"].) However, courts have interpreted such fee provisions not to be covered by Civil Code section 1717. (See *Lachkar v. Lachkar* (1986) 182 Cal.App.3d 641, 648 (*Lachkar*) [party who filed successful petition to compel arbitration not entitled to interim award of attorney fees incurred in connection with petition under Civil Code section 1717 because at time the award

---

[3]     We reject the trial court's determination that the fee-shifting provision applies to FEHA claims, i.e., it awards costs and attorneys' fees to a party that prevails on a FEHA claim. By its plain language, the provision applies only to successful motions or petitions to compel arbitration.

was made, "there was no prevailing party pursuant to that statute"]; accord, *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 843 (*Roberts*).) In short, Civil Code section 1717 does not apply, and the fee-shifting provision is unconscionable.[4]

Before the trial court and now on appeal, respondents advance the claim that the Agreements also were substantively unconscionable for lack of mutuality. According to respondents, under the arbitration clause, only employees are required to arbitrate employment-related disputes. We find no lack of mutuality in the obligation to arbitrate employment-related disputes. Under the agreement, "*any issue between* [*the employee*] *and the Company* or any of its employees, agents, officers, directors or affiliates, *which relates to* [*the employee's*] *employment with the Company*, including, but not limited to any claims of discrimination, harassment, retaliation, statutory claims, tort claims or contract claims, *must be resolved exclusively through binding arbitration*." (Italics added.) As the trial court noted, there is no carve-out for claims typically brought by employers, such as trade secret claims. Nor did the Agreements limit arbitration to claims brought by the employee, as would be the case had the Agreements, for example, provided, "I agree to submit *my* issues with the Company to binding arbitration." (Cf. *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 [contractual language providing, "I understand and agree that if my employment is terminated or my employment status is otherwise changed or if any other dispute arises concerning my employment . . . , I will

---

[4]     Appellants' reliance on *Goff v. G2 Secure Staff LLC* (C.D. Cal. April 22, 2013, CV 12-10008-CAS) 2013 U.S. Dist. LEXIS 59628, *16-*17), is misplaced, as the *Goff* court never addressed *Lachkar* or *Roberts* when it held that Civil Code section 1717 applied to a one-sided fee-shifting provision in an arbitration agreement.

submit any such dispute . . . exclusively to binding arbitration . . . [,]" lacked mutuality on its face; when read in conjunction with the employee handbook, however, there was a mutual obligation to arbitrate "any such dispute"].) In short, the arbitration clause evidences a mutual obligation to arbitrate all claims related to respondents' employment with Medway.[5]

Respondents contend that the language in the arbitration clause indicates a unilateral obligation, as the Agreements use the terms "I agree" and "I understand," as opposed to "The Company and I agree," and require only the employee's signature. Respondents' contention was rejected in *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*). There, the employee signed a mandatory predispute agreement containing an arbitration clause that provided: "'I agree, in the event I am hired by the company, that all disputes and claims that might arise out of my employment with the company will be submitted to binding arbitration.'" (*Id*. at p. 1466.) The employee argued that the "'I agree'" language manifested only a unilateral obligation to arbitrate. The appellate court disagreed: "Absent some indicia in the agreement that arbitration is limited to the employee's claims against the employer, the use of the 'I agree' language in an arbitration clause that expressly covers 'all disputes' creates a mutual agreement to arbitrate all claims arising out of the applicant's employment." (*Ibid*.)[6]

---

[5] We note that the issue whether the unconscionability defense to an arbitration clause, based on lack of mutuality of the obligation to arbitrate, survives *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __ [131 S.Ct. 1740], is presently pending before our Supreme Court in *Sabia v. Orange County Metro Realty, Inc*., review granted September 24, 2014, S220237.

[6] *Roman* distinguished *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, as one in which there were more unconscionable provisions, concluding, "we simply do not believe the *Higgins* court intended to hold the mere inclusion of the

13

Like the court in *Roman*, we decline to find that "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement." (*Roman*, *supra*, 172 Cal.App.4th at p. 1473.)  If the agreement had read "I agree that all disputes shall be settled according to the law of California," we would have no difficulty concluding that a court would apply California law to any dispute, regardless of whether the employer or the employee initiated it.  By agreeing that "any issue" between plaintiffs and the employer "must be resolved exclusively through binding arbitration," plaintiffs were doing no more than acknowledging that all disputes between them and Medway would be resolved through binding arbitration.  No separate signature was required by Medway, as it was the company that set binding arbitration of all disputes as a condition of respondents' employment.  In short, there was a mutual obligation to arbitrate any and all employment-related issues.

For the first time on appeal, respondents contend that the Agreements were substantively unconscionable because (1) the Agreements failed to provide that the employer would pay the fees or costs unique to arbitration; and (2) the Agreements denied employees their right to pursue FEHA claims by providing that employees must make a written petition for arbitration with Medway's management within "the time limits that would apply to file a civil complaint in court."  As respondents did not advance those claims before the trial court in opposing appellants' motion to compel arbitration, they have forfeited them.  (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682, fn. 5.)  Even

---

words 'I agree' by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement.'" (*Roman*, *supra*, 172 Cal.App.4th at p. 1473.)

14

were we to consider the contentions, we would find no substantive unconscionability.

On the allocation of arbitral fees and costs, under *Armendariz*, employers must pay the fees and costs unique to arbitration. Moreover, where an arbitration agreement is silent on arbitration costs, the agreement should be interpreted to provide that the employer will pay all types of fees and costs unique to arbitration. "The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 113; accord, *Fittante v. Palm Springs Motors, Inc*. (2003) 105 Cal.App.4th 708, 719.) Although the Agreements are silent on the allocation of arbitral fees and costs, Medway has asserted that respondents are not required to pay any of the expenses uniquely associated with the arbitration process. In light of Medway's concession, and consistent with *Armendariz*, we interpret the Agreements to provide that Medway will pay all fees and costs unique to arbitration. Therefore, the Agreements do not impose substantively unconscionable arbitral fees and costs on respondents.

As to the arbitral limitation period provision, the provision simply incorporated existing statutes of limitations, which the Legislature has determined to be sufficient time for a plaintiff to bring an action on a claim. Accordingly, the arbitral limitation period provision provided adequate time for respondents to vindicate their FEHA claims in arbitration.

In sum, the only substantively unconscionable provision in the Agreements is the fee-shifting provision. Appellants contend that the fee-shifting provision is severable, and we agree. The Agreements contain a severability clause, providing that "If any court of competent jurisdiction finds any part of this Arbitration Agreement is illegal, invalid or unenforceable, such a finding will not affect the

15

legality, validity or enforceability of the remaining parts of the Agreement, and the illegal, invalid or unenforceable part will be stricken from the agreement." We discern no reason not to sever the fee-shifting provision. The provision may be severed without affecting the remainder of the Agreement. (See *Armendariz*, *supra*, 24 Cal.4th at p. 124 ["If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance and restriction, then such severance or restriction are appropriate."].) Additionally, the Agreements are not permeated with illegality or defects. (See *Armendariz*, *supra*, 24 Cal.4th at p. 124 [court may refuse to enforce agreement permeated with unconscionability].) As indicated above, absent the fee-shifting provision, we ascertain no other substantively unconscionable provision in the Agreements. (See, e.g., *Lane v. Francis Capital Management*, *LLC*, *supra*, 224 Cal.App.4th at p. 693 [finding unconscionable provision severable where arbitration agreement was not permeated with unconscionability].)

Having severed the unconscionable fee-shifting provision, the Agreements are not substantively unconscionable. As there is no substantive unconscionability, the Agreements are enforceable. (See *Armendariz*, *supra*, 24 Cal.4th at p. 114 [both procedural and substantive unconscionability must be present to support determination that arbitration agreement was unenforceable as being unconscionable contract].) Thus, we reverse the trial court's order denying appellants' motion to compel arbitration. We remand the matter to the trial court to enter an order granting appellants' motion to compel respondents to arbitrate their claims.

16

**DISPOSITION**

The order is reversed and remanded for further proceedings consistent with this opinion.  Appellants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


MANELLA, J.


We concur:




WILLHITE, Acting P. J.




COLLINS, J.

17