174 Cal.App.4th 546 (2009)
___ Cal.Rptr.3d ___
SONIC-CALABASAS A, INC., Plaintiff and Appellant,
v.
FRANK MORENO, Defendant and Respondent.
No. B204902.
Court of Appeals of California, Second District, Division Four.
May 29, 2009.
*551 Fine, Boggs & Perkins, David J. Reese and John P. Boggs for Plaintiff and Appellant.
Rachel Folberg and Miles E. Locker for Defendant and Respondent.

*552 OPINION
SUZUKAWA, J.
In this case we consider whether an admittedly valid employment arbitration agreement that is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA) may be enforced to dismiss a former employee's administrative wage claim against his former employer for unpaid vacation pay. The former employee, respondent Frank Moreno, filed an administrative wage claim with the Labor Commissioner according to the "Berman" process provided in Labor Code section 98 et seq.[1] (Added by Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371.) Moreno's former employer, appellant Sonic-Calabasas A, Inc. (Sonic), petitioned the superior court to dismiss the Berman proceeding and compel arbitration in accordance with the parties' arbitration agreement, which Moreno conceded was a valid agreement. The superior court denied the petition as premature. We reverse the order denying Sonic's motion to compel arbitration.
Sonic contends that the Labor Commissioner's jurisdiction over this statutory wage claim was divested by the FAA. Sonic cites as controlling authority the United States Supreme Court's recent decision in Preston v. Ferrer (2008) 552 U.S. ___ [169 L.Ed.2d 917, 128 S.Ct. 978] (Preston), in which the Labor Commissioner's original and exclusive jurisdiction was held to be divested by the FAA with regard to a contract dispute arising under the Talent Agencies Act (§ 1700 et seq.) (TAA). Alternatively, Sonic argues that even if the minimum requirements for arbitration set forth in Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (Armendariz) apply to this statutory wage claim, a Berman hearing is not a prerequisite to arbitration, either under Armendariz or Gentry v. Superior Court (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (Gentry).
We conclude that Moreno waived his right to a Berman proceeding and enforcement of that waiver is not barred by Armendariz or Gentry.

BACKGROUND
The facts are undisputed. Frank Moreno is a former employee of Sonic, which owns and operates an automobile dealership. As a condition of his employment with Sonic, Moreno signed a predispute agreement that required both parties to submit their employment disputes to "binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec. 1280 et seq. . . .)." By its terms, the arbitration agreement applied to "all disputes that may arise out *553 of the employment context . . . that either [party] may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum[,] . . . whether based on tort, contract, statutory, or equitable law, or otherwise."
At some point, Moreno left his position with Sonic. In December 2006, Moreno filed an administrative wage claim with the Labor Commissioner for unpaid vacation pay pursuant to section 98 et seq. Moreno alleged that he was entitled to unpaid "[v]acation wages for 63 days earned 7/15/02 to 7/15/06 at the rate of $441.29 per day."
In February 2007, Sonic petitioned the superior court to compel arbitration of the wage claim and dismiss the pending administrative action. (Code Civ. Proc., § 1281.2.) The parties agreed that the arbitration agreement applied to the wage claim, but disagreed as to whether the arbitration agreement contained a waiver of the right to a Berman proceeding (Berman waiver), which would bar Moreno's administrative wage claim under section 98 et seq. Sonic argued that such a waiver was created by the provision of the arbitration agreement requiring arbitration of all employment disputes that could otherwise be brought in any judicial "or other governmental dispute resolution forum."
The Labor Commissioner intervened below on behalf of Moreno (§ 98.5), who adopted the Labor Commissioner's arguments. The Labor Commissioner argued that nothing in the arbitration agreement precluded Moreno from filing an administrative wage claim under section 98 et seq., which could then be followed by arbitration in lieu of the de novo appeal to superior court that is otherwise available under section 98.2. The Labor Commissioner argued against bypassing the Berman process, claiming that, under Armendariz, it is a necessary prerequisite to arbitration. The rationale for this conclusion was that, in the event the employee prevailed in the Berman process and the employer then moved to compel arbitration, the arbitrator would be required to provide the employee with all of the protections that would otherwise be available if the employer had sought a de novo appeal in superior court under section 98.2. However, the Labor Commissioner failed to identify any statutory authority to support this conclusion.
The superior court denied the petition to compel arbitration as premature. Citing Armendariz, the superior court stated that, as a matter of "basic public policy . . . until there has been the preliminary non-binding hearing and decision by the Labor Commissioner, the arbitration provisions of the employment contract are unenforceable, and any petition to compel arbitration is premature and must be denied."
*554 Sonic appealed from the order of denial. (Code Civ. Proc., § 1294, subd. (a) [order denying a motion to compel arbitration is appealable].) During the briefing period, the United States Supreme Court decided Preston, which held that the Labor Commissioner's original and exclusive jurisdiction was divested by the FAA with regard to a contract dispute arising under the TAA. The Labor Commissioner has not filed a respondent's brief in this appeal.

DISCUSSION
(1) "A petition to compel arbitration is resolved in a summary proceeding with the trial court sitting as trier of fact and weighing declarations, documentary evidence and any oral testimony. (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 972 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Pursuant to Code of Civil Procedure section 1281.2, unless the petitioner has waived arbitration, grounds exist for revocation of the agreement, or a party to the arbitration agreement is also a party to a pending matter with a third party and there is a possibility of conflicting rulings on a common issue, the trial court `shall order' the parties to arbitrate the controversy `if it determines that an agreement to arbitrate the controversy exists.'" (Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority (2003) 107 Cal.App.4th 673, 684 [132 Cal.Rptr.2d 207].) "`"Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court."'" (Id. at p. 685.)
As there were no disputed facts below, we will exercise our independent judgment on appeal.

I. The Right to Wages and the Berman Hearing Process

(2) In Cuadra v. Millan (1998) 17 Cal.4th 855, 858-859 [72 Cal.Rptr.2d 687, 952 P.2d 704] (Cuadra), disapproved on other grounds in Samuels v. Mix (1999) 22 Cal.4th 1, 16, footnote 4 [91 Cal.Rptr.2d 273, 989 P.2d 701], the California Supreme Court discussed the employee's right to receive earned wages and engage in the Berman hearing process as follows: "The wage rights of an employee may be provided for in the employment contract between the employee and the employer, whether oral or written, including a collective bargaining agreement. The employee's wage rights are also closely regulated by statute: The Labor Code prescribes such matters as the time and manner of paying wages, minimum wage requirements, and mandatory overtime pay; for certain industries and occupations, minimum wages and overtime pay are also prescribed by administrative regulations known as wage orders, issued by the Industrial Welfare Commission pursuant to *555 statutory authority (see Industrial Welfare Com. v. Superior Court (1980) 27 Cal.3d 690, 700-703 [166 Cal.Rptr. 331, 613 P.2d 579]). [Fn. omitted.]
(3) "If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek judicial relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek administrative relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371) and is commonly known as the `Berman' hearing procedure after the name of its sponsor.[2]
"The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. [Fn. omitted.] In brief, in a Berman proceeding the commissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; the answer may set forth the evidence that the defendant intends to rely on, and there is no discovery process; if the defendant fails to appear or answer no default is taken and the commissioner proceeds to decide the claim, but may grant a new hearing on request. (§ 98.) The commissioner must decide the claim within 15 days after the hearing. (§ 98.1.) Within 10 days after notice of the decision any party may appeal to the appropriate court, where the claim will be heard de novo; if no appeal is taken, the commissioner's decision will be deemed a judgment, final immediately and enforceable as a judgment in a civil action. (§ 98.2.) (See generally, 1 Wilcox, Cal. Employment Law (1997) §§ 5.10 to 5.19, pp. 5-16.2 to 5-52 . . . .)" (Cuadra, supra, 17 Cal.4th at pp. 858-859.)

II. The Right to Vacation Pay

(4) Under California law, vacation pay constitutes wages. "The Labor Code defines `wages' as `all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.' (§ 200, subd. (a).) Courts have recognized that `wages' also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay. (E.g., Suastez v. Plastic Dress-Up Co. (1982) 31 Cal.3d 774, 780 [183 Cal.Rptr. 846, 647 P.2d 122]; Department of Industrial Relations v. UI Video Stores, Inc. (1997) 55 *556 Cal.App.4th 1084, 1091 [64 Cal.Rptr.2d 457].)" (Murphy v. Kenneth Cole Productions, Inc. (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)
The right to a paid vacation is a contract right that, once vested, may not be forfeited upon termination. (§ 227.3.)[3] According to Suastez v. Plastic Dress-Up Co., supra, 31 Cal.3d at page 784, "[t]he right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation `vests' as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay. [Fn. omitted.]"
(5) In the absence of an arbitration agreement, it is clear that an employee may pursue a wage claim for vacation pay in either an administrative (§ 98 et seq.) or judicial (§ 229) forum. Also, it is clear that even with an arbitration agreement, an employee may pursue a wage claim in a judicial forum, provided the agreement is not governed by the FAA. Under California law, section 229 provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. . . ."
However, given that this action is governed by the FAA, we are faced with the following issues: (1) whether Preston compels the conclusion that the Labor Commissioner's jurisdiction over Moreno's statutory wage claim was divested by the FAA, and, if not, (2) whether Moreno contractually waived the statutory right to pursue his wage claim in an administrative forum (Berman waiver), and, if so, (3) whether the Berman waiver is unenforceable for public policy reasons under Armendariz or Gentry.

*557 III. Preston Is Not Dispositive of This Case

A. Federal Preemption Generally

Section 2 of the FAA provides in relevant part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)
(6) According to Preston, "[s]ection 2 `declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner. Southland Corp. [v. Keating (1984)] 465 U.S. [1,] 10 [79 L.Ed.2d 1, 104 S.Ct. 852]. That national policy, we held in Southland, `appli[es] in state as well as federal courts' and `foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements.' Id., at 16 [104 S.Ct. 852]. The FAA's displacement of conflicting state law is `now well-established,' Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272 [130 L.Ed.2d 753, 115 S.Ct. 834] (1995), and has been repeatedly reaffirmed, see, e.g., Buckeye [Check Cashing, Inc. v. Cardegna (2006)] 546 U.S. [440,] 445-446 [163 L.Ed.2d 1038, 126 S.Ct. 1204]; Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 684-685 [134 L.Ed.2d 902, 116 S.Ct. 1652] (1996); Perry v. Thomas, 482 U.S. 483, 489 [96 L.Ed.2d 426, 107 S.Ct. 2520] (1987). [Fn. omitted.]" (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 983].)
The FAA "incorporates a strong federal policy of enforcing arbitration agreements, including agreements to arbitrate statutory rights. (See Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1074-1075 [90 Cal.Rptr.2d 334, 988 P.2d 67] . . ., and cases cited therein.)" (Armendariz, supra, 24 Cal.4th at pp. 96-97.) In light of this strong federal policy, we are required to "`"rigorously enforce agreements to arbitrate."' (Shearson/American Express, Inc. v. McMahon (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 107 S.Ct. 2332].) [Fn. omitted.]" (Lagatree v. Luce, Forward, Hamilton & Scripps (1999) 74 Cal.App.4th 1105, 1117-1118 [88 Cal.Rptr.2d 664].)

B. Federal Preemption Under Preston
(7) As previously mentioned, Preston involved a contractual dispute involving an alleged violation of the TAA. Under California law, the Labor Commissioner has original and exclusive jurisdiction over disputes arising under the TAA, including the validity of personal management contracts between artists and their managers, and their respective liabilities thereunder. (Buchwald v. Superior Court (1967) 254 Cal.App.2d 347, 357 [62 Cal.Rptr. *558 364]; Styne v. Stevens (2001) 26 Cal.4th 42, 54 [109 Cal.Rptr.2d 14, 26 P.3d 343] [disputes arising under the TAA "`must be heard by the Commissioner, and all remedies before the Commissioner must be exhausted before the parties can proceed to the superior court'"].)
In Preston, a personal manager instituted an arbitration proceeding against his client, an artist, for breach of contract, but the artist filed an administrative action with the Labor Commissioner, seeking to invalidate the entire contract based on the manager's allegedly unlicensed talent agent activities on the artist's behalf in violation of the TAA.[4] The artist also filed a judicial action for injunctive and declaratory relief. The manager moved to compel arbitration, which the superior court denied, and the manager appealed from the order of denial. The appellate court affirmed the denial of the motion to compel arbitration in a published decision (Ferrer v. Preston (2006) 145 Cal.App.4th 440 [51 Cal.Rptr.3d 628], review den. Feb. 14, 2007), which was reversed by the United States Supreme Court while this appeal was pending.
Given that the Labor Commissioner was asked to invalidate the parties' entire contract on a TAA-based defense, the Supreme Court concluded the artist had "urged the Labor Commissioner and California courts to override the contract's arbitration clause on a ground that Buckeye requires the arbitrator to decide in the first instance." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 984].) The Supreme Court pointed out that according to Buckeye Check Cashing, Inc. v. Cardegna, supra, 546 U.S. 440, "when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 981].) "The dispositive issue," the Supreme Court stated in Preston, "is not whether the FAA preempts the TAA wholesale. [Citation.] The FAA plainly has no such destructive aim or effect. Instead, the question is simply who decides whether Preston acted as personal manager or as talent agent." (Id. at p. ___ [128 S.Ct. at p. 983].)
In rejecting the artist's contentions, the Supreme Court considered whether allowing the administrative hearing to proceed would not violate the FAA because arbitration would merely be postponed until the Labor Commissioner issued a nonbinding ruling on the validity of the artist's TAA-based defense. The Supreme Court concluded that this was not a viable argument, stating: *559 "Nor does Ferrer's [the artist's] current argumentthat § 1700.44(a) merely postpones arbitrationwithstand examination. Section 1700.44(a) provides for de novo review in Superior Court, not elsewhere.[5] Arbitration, if it ever occurred following the Labor Commissioner's decision, would likely be long delayed, in contravention of Congress' intent `to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.' Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 22 [74 L.Ed.2d 765, 103 S.Ct. 927] (1983). If Ferrer prevailed in the California courts, moreover, he would no doubt argue that judicial findings of fact and conclusions of law, made after a full and fair de novo hearing in court, are binding on the parties and preclude the arbitrator from making any contrary rulings." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 986].)
The Supreme Court pointed out that "[a] prime objective of an agreement to arbitrate is to achieve `streamlined proceedings and expeditious results.' Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633 [87 L.Ed.2d 444, 105 S.Ct. 3346] (1985). See also Allied-Bruce Terminix Cos., 513 U.S., at 278; Southland Corp., 465 U.S., at 7 [104 S.Ct. 852]. That objective would be frustrated even if Preston could compel arbitration in lieu of de novo Superior Court review. Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 986].)
Before concluding that the Labor Commissioner's jurisdiction was preempted by the FAA, the Supreme Court emphasized that the validity and substantive rights of the arbitration agreement were not in dispute, stating: "Finally, it bears repeating that Preston's petition presents precisely and only a question concerning the forum in which the parties' dispute will be heard. See supra, at 983. `By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum.' Mitsubishi Motors Corp., 473 U.S., at 628 [105 S.Ct. 3346]. So here, Ferrer relinquishes no substantive rights the TAA or other California law may accord him. But under the contract he signed, he cannot escape resolution of those rights in an arbitral forum." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 987].)
*560 For the above reasons, the Supreme Court concluded that the Labor Commissioner's jurisdiction over the administrative action was divested by the FAA. But it expressed this conclusion in a broadly worded statement: "We hold today that, when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 981].) By focusing solely on the breadth of this holding, Sonic argues that, under Preston, we are compelled to conclude the FAA preempts the Labor Commissioner's jurisdiction over all wage claims filed under section 98 et seq. We do not read Preston so broadly.
As the Supreme Court in Preston explained: (1) the artist was seeking to invalidate the entire contract based on the personal manager's alleged violations of the TAA, which is an issue that Buckeye requires the arbitrator to decide in the first instance; (2) the validity and substantive rights of the arbitration clause were not in dispute; and (3) the only issue was whether the fee dispute should be resolved in an arbitral or administrative forum. The parties did not litigate in Preston whether there were any generally applicable contract defenses, such as fraud, duress, or unconscionability, which would invalidate or restrict the arbitration agreement. "Only `generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate [or restrict] arbitration agreements without contravening § 2' of the FAA. (Doctor's Associates, supra, 517 U.S. at p. 687.)" (Cronus Investments, Inc. v. Concierge Services (2005) 35 Cal.4th 376, 385 [25 Cal.Rptr.3d 540, 107 P.3d 217].)
In this case, the parties disagree as to whether it would be unconscionable under Armendariz or Gentry to restrict the arbitration clause by invalidating the Berman waiver. Accordingly, the issues in this case are distinguishable from those that were addressed in Preston. We therefore disagree with Sonic's position that Preston is dispositive of this case.

IV. The Agreement Contained a Berman Waiver

Under California law, an arbitration agreement may not be enforced to preclude an employee from pursuing a statutory wage claim in a judicial forum under section 229. But in Perry v. Thomas, supra, 482 U.S. at page 492, the United States Supreme Court held that the FAA preempted section 229, thereby denying a judicial forum to those employees whose arbitration agreements are governed by the FAA. Two years after Perry was decided, the Labor Commissioner refused to consider an employee's administrative claim for overtime pay in Baker v. Aubrey (1989) 216 Cal.App.3d 1259 [265 Cal.Rptr. 381], on the ground that his statutory jurisdiction under section 98 et seq. was preempted by the FAA. The Labor Commissioner's jurisdictional *561 ruling was upheld by the superior court in a writ of mandate proceeding, which was affirmed on appeal. The employee argued on appeal that because the right to overtime pay is statutory and cannot be waived, it is therefore not subject to arbitration. In rejecting this argument and concluding that the arbitration agreement was enforceable to preclude an administrative forum for the wage claim, the appellate court stated that "[r]esolution of Baker's overtime pay claim by arbitration does not deprive her of her substantive rights. It only changes the forum in which they will be resolved. [Citation.]" (216 Cal.App.3d at p. 1268.)
(8) In this case, the Labor Commissioner exercised jurisdiction over Moreno's wage claim on the theory that the arbitration agreement did not preclude him from engaging in the Berman process prior to arbitration. Whether the Labor Commissioner's interpretation of the arbitration agreement was correct presents solely a question of law, given that no extrinsic evidence was presented below as to the meaning of the contract. The interpretation of a contract is purely a legal issue for the court "unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, `An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' [Citations.]" (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839], fn. omitted.)
According to the arbitration agreement, Moreno was precluded from pursuing any judicial "or other governmental dispute resolution forum," with "the sole exception" of "claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers Compensation Act[] and Employment Development claims." In addition, the agreement stated that Moreno was allowed to file "administrative proceedings only before the California Department of Fair Employment and Housing, or the U.S. Equal Opportunity Commission." (Italics added.)
(9) As shown by the above contractual provisions, the parties contemplated that Moreno could pursue only those administrative remedies that were listed as exceptions to the agreement. Given that neither the Division of Labor Standards Enforcement nor the Labor Commissioner was listed among the stated exceptions, we conclude, as a matter of law, that Moreno was barred from pursuing an administrative wage claim under section 98 et seq. Having concluded that the arbitration agreement contained a Berman waiver, we turn to the issue of whether the waiver is unenforceable for public policy reasons under Armendariz or Gentry.

*562 V. The Berman Waiver Is Not Unenforceable Under Armendariz or Gentry
(10) According to Armendariz, "arbitration agreements that encompass unwaivable statutory rights must be subject to particular scrutiny." (Armendariz, supra, 24 Cal.4th at p. 100.) "[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights ...." (Id. at p. 101.)
Armendariz enumerated several minimum requirements for arbitration that apply "to unwaivable claims that are `carefully tethered to statutory or constitutional provisions' (Boghos v. Certain Underwriters at Lloyd's of London (2005) 36 Cal.4th 495, 508 [30 Cal.Rptr.3d 787, 115 P.3d 68] ...), such as discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) or wrongful discharge in violation of public policy (i.e., claims under Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330])." (Giuliano v. Inland Empire Personnel, Inc. (2007) 149 Cal.App.4th 1276, 1280 [58 Cal.Rptr.3d 5] (Giuliano).) The Supreme Court explained in Gentry, supra, 42 Cal.4th 443, that it imposed the Armendariz requirements because they are "`necessary to enable an employee to vindicate ... unwaivable rights in an arbitration forum.' (Little [v. Auto Stiegler, Inc. (2003)] 29 Cal.4th [1064,] 1077 [130 Cal.Rptr.2d 892, 63 P.3d 979].)" (Gentry, supra, at p. 457.) It stated that even though a party who is compelled to arbitrate unwaivable rights "`does not waive them, but merely "`submits to their resolution in an arbitral, rather than a judicial, forum'" [citation], arbitration cannot be misused to accomplish a de facto waiver of these rights.' (Little, supra, 29 Cal.4th at p. 1079.)" (Gentry, supra, at p. 457.)
Gentry summarized the Armendariz requirements as follows: "`(1) the arbitration agreement may not limit the damages normally available under the statute (Armendariz, supra, 24 Cal.4th at p. 103); (2) there must be discovery "sufficient to adequately arbitrate their statutory claim" (id. at p. 106); (3) there must be a written arbitration decision and judicial review "`sufficient to ensure the arbitrators comply with the requirements of the statute'" (ibid.); and (4) the employer must "pay all types of costs that are unique to arbitration" (id. at p. 113).' (Little v. Auto Stiegler, Inc.[, supra,] 29 Cal.4th [at p.] 1076 ....)" (Gentry, supra, 42 Cal.4th at pp. 456-457.)

A. The Right to Vacation Pay, Once Vested, Is Unwaivable

Sonic contends that the superior court erroneously applied the Armendariz requirements to this case because the right to vacation pay is not an unwaivable right. We disagree.
As previously discussed, the right to a paid vacation is a contract right that, once vested, may not be forfeited upon termination. (§ 227.3; Suastez v. *563 Plastic Dress-Up Co., supra, 31 Cal.3d at p. 784.) However, Sonic relies on Giuliano, supra, 149 Cal.App.4th 1276, as persuasive authority for its position that vacation pay, like the bonus and severance pay claims that were at issue in Giuliano, is not an unwaivable right that is subject to Armendariz.
In Giuliano, we held that an employee's contract claim for a "$5 million to $8 million bonus and a $500,000 severance payment" was not subject to Armendariz. (Giuliano, supra, 149 Cal.App.4th at p. 1289.) We distinguished the employee's multimillion-dollar contract claim from the more modest claims that generally are involved in minimum wage and statutory overtime pay cases. (Id. at p. 1290; see Gentry, supra, 42 Cal.4th at pp. 458-459 [employees bringing overtime pay suits typically have modest means and recover modest awards].) We concluded that the plaintiff's multimillion-dollar contract claims for bonus and severance pay were not subject to Armendariz because they were "not based on the FEHA or a fundamental public policy that is tied to a constitutional or statutory provision. [Citations.]" (Giuliano, at pp. 1290-1291.)
Sonic contends that "Moreno is much more akin to Mr. Giuliano than he is to a minimum- or lower-wage earner," but "would have the Court view his individual claim for more than $40,000 (when penalties are included) as [a] simple claim for a more modest sum." Sonic asserts that Moreno's claim is "large enough to provide sufficient individual incentive to vigorously pursue. There is no need to further incentivize his claim by grafting the preempted, nonbinding administrative process into his arbitration agreement by deeming it a fundamental source of unwaivable rights."
Regardless of the size of Moreno's vacation pay claim, section 227.3, which precludes the forfeiture of a vested right to vacation pay, distinguishes this case from Giuliano. The right to vacation pay, once vested, is statutorily protected from forfeiture as a matter of public policy. We therefore conclude that Moreno's vacation pay claim is subject to Armendariz because it is tied to a statutory provision.

B. Suitability of the Arbitral Forum

Sonic contends that the record fails to show that the Berman waiver is unenforceable for public policy reasons under Armendariz or Gentry. We agree.

*564 1. Gentry and Class Arbitration Waivers

Gentry involved an employee's purported class action lawsuit against his employer for statutory overtime pay under sections 510 and 1194.[6] The employer moved to compel individual arbitration of each claim pursuant to an employment arbitration agreement containing a class arbitration waiver. Although the superior court severed and invalidated two provisions of the arbitration agreement (cost splitting and limitation of remedies), it enforced the remainder of the agreement, including the class arbitration waiver, and required the plaintiff to submit to individual arbitration. After the appellate court denied the employee's writ of mandate petition, the Supreme Court granted review.
(11) Among the issues decided in Gentry was "whether a class arbitration waiver would lead to a de facto waiver of statutory rights, or whether the ability to maintain a class action or arbitration is `necessary to enable an employee to vindicate ... unwaivable rights in an arbitration forum.' (Little, supra, 29 Cal.4th at p. 1077.)" (Gentry, supra, 42 Cal.4th at p. 457.) The Supreme Court concluded these questions must be decided on a case-by-case basis, as there are some circumstances when a class arbitration waiver "would lead to a de facto waiver [of statutory rights] and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws." (Ibid.)
According to Gentry, "when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the [following] factors ...: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual *565 arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can `vindicate [their] unwaivable rights in an arbitration forum.' (Little, supra, 29 Cal.4th at p. 1077.) [Fn. omitted.]" (Gentry, supra, 42 Cal.4th at p. 463.)

2. Denial of Statutory Protections

Moreno contends that unless the Berman waiver is invalidated, he will forgo the following statutory protections afforded by sections 98.2 and 98.4 that will apply in a de novo appeal by Sonic of an adverse administrative ruling: (1) the employer must post an undertaking in the amount of the Labor Commissioner's award (§ 98.2, subd. (b)); (2) if the award is affirmed on appeal, the appellant (presumably, the employer) must pay for costs and attorney fees on appeal of the respondent (presumably, the employee) (§ 98.2, subd. (c)); and (3) if an employee is financially unable to afford counsel for the de novo review, the employee may request counsel from the Labor Commissioner, provided the employee is not objecting to any part of the Labor Commissioner's final order and is seeking to uphold the award (§ 98.4).
(12) We must decide whether the absence of these statutory protections will significantly impair Moreno's ability to vindicate his wage rights in arbitration. According to Gentry, "Armendariz makes clear that for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights." (Gentry, supra, 42 Cal.4th at p. 463, fn. 7.)
Significantly, all of these statutory protections are only available if and when an employer appeals from an adverse administrative ruling. Obviously, it is impossible to determine whether Moreno will prevail at the administrative hearing. Accordingly, it is impossible to determine whether Moreno will lose any statutory protections if the Berman waiver is enforced. Unless enforcing the Berman waiver will pose significant obstacles to the vindication of Moreno's statutory wage rights, Armendariz does not require us to invalidate the waiver. At most, enforcing the Berman waiver will eliminate the possibility of receiving statutory protections that are contingent on an administrative ruling in Moreno's favor. We are not persuaded that the loss of what are merely contingent benefits can be equated with the significant obstacle to the vindication of statutory rights that Armendariz sought to address.
*566 Moreover, Moreno provided no supporting authority for his assertion that invalidating the Berman waiver will entitle him to these "essential" statutory protections in an arbitral forum. He simply asserts that "the possibility that an employee could access the Berman process remedies without prior recourse to the Labor Commissioner is an illusion. The reality is that there is no statutory authority or basis for providing these remedies to an employee unless and until the Labor Commissioner holds a hearing and issues a ruling favorable to the employee. In other words, without a hearing, there can be none of the essential remedies provided by the Berman process."
However, the statutory scheme provides for de novo review only in a judicial, not arbitral, forum. The relevant statutes do not require an arbitrator to provide Moreno with the same protections that might be available to him in a de novo review in superior court. As far as the Berman process is concerned, the statutory protections are only available, if at all, during a de novo review in superior court.

3. Delay of Arbitration

Sonic objected to postponing arbitration in order to engage in a nonbinding Berman process that could take months or even years to complete. Sonic provided evidence below of the time consumed by the Berman process in several other cases, which it summarized as follows: "(See Reese Reply Decl., at ¶¶ 2-4 and Exhibit I [initial claim filed 10/17/2001; hearing held 6/24/2004; decision issued 8/3/2005]; Exhibit J [claim filed 9/4/2002; hearing held 8/1/2003]; Exhibit K [claim filed 9/13/2006; hearing held 7/30/2007; decision issued 8/27/2007].)" This evidence was not refuted.
In Preston, the artist, like Moreno, similarly argued that he was entitled to the Labor Commissioner's adjudication of his TAA-based defense, which would then be subject to de novo review in arbitration. In rejecting this argument, the Supreme Court pointed out that the TAA only "provides for de novo review in Superior Court, not elsewhere. [Fn. omitted.] Arbitration, if it ever occurred following the Labor Commissioner's decision, would likely be long delayed, in contravention of Congress' intent `to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.' Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., [supra,] 460 U.S. 1, 22 .... If [the employee] prevailed in the California courts, moreover, he would no doubt argue that judicial findings of fact and conclusions of law, made after a full and fair de novo hearing in court, are binding on the parties and preclude the arbitrator from making any contrary rulings." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 986], fn. omitted.)
*567 (13) We conclude that the same rationale applies here. The record in this case is devoid of any evidence that the Berman process will save employees time or money. As the California Supreme Court pointed out in Gentry, "It is true that an employee may seek administrative relief from overtime violations with the Labor Commissioner through a `Berman' hearing procedure pursuant to sections 98 to 98.8. (Added by Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371.) But a losing employer has a right to a trial de novo in superior court, where the ruling of the Labor Commissioner's hearing officer is entitled to no deference. (§ 98.2, subds. (b), (c); Murphy v. Kenneth Cole Productions, Inc.[, supra,] 40 Cal.4th 1094, 1116 ....) Thus, Berman hearings may result in no cost savings to the employee." (Gentry, supra, 42 Cal.4th at p. 464.) "[E]ven if [Sonic] could compel arbitration in lieu of de novo Superior Court review[, r]equiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." (Preston, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 986].)

4. Public Policy

Moreno contends that Berman waivers should be invalidated as a matter of public policy because forcing employees to undergo a case-by-case determination of each waiver's validity "would completely subvert" the goal in Gentry of providing a substantially more effective way of vindicating statutory rights. Moreno argues that "[i]nstead of a quick cost-free determination of their right to the remedial tools they need in order to meaningfully litigate their claims, employees would now be forced, in every case, to immediately engage in court litigation without the very tools they need in order to conduct litigation."
As we previously stated, however, Moreno has failed to persuade us that enforcing the Berman waiver in this case would deprive him of rights that are necessary to the vindication of a statutory wage claim. Moreover, the record contains no evidence that Moreno or any other wage claimant lacks the knowledge, skills, abilities, or resources to vindicate his or her statutory wage rights in an arbitral forum. Even assuming the arbitral process is more difficult to navigate than the Berman process, there is nothing in this record to indicate that enforcing a Berman waiver will significantly impair the claimant's ability to vindicate his or her statutory rights. In short, Moreno has failed to demonstrate either the inadequacy of the arbitral forum provided by his arbitration agreement or the existence of a factual basis to invalidate all Berman waivers as against public policy.

*568 DISPOSITION
The order denying the petition is reversed with directions to enter a new order granting the petition and dismissing the administrative proceedings. Sonic is entitled to its costs on appeal.
Willhite, Acting P. J., and Manella, J., concurred.
NOTES
[1] All further statutory references are to the Labor Code unless otherwise indicated.
[2] "Other administrative remedies may also be available, e.g., actions by the commissioner to recover minimum wages and overtime pay on behalf of the employee (§ 1193.6) and to obtain statutory penalties for failure to pay wages (§§ 210, 225.5). They are not at issue in this case."
[3] Section 227.3 provides: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. . . ."
[4] As pointed out in Preston, under California law, "[c]ourts `may void the entire contract' where talent agency services regulated by the TAA are `inseparable from [unregulated] managerial services.' Marathon Entertainment, Inc. v. Blasi [(2008) 42 Cal.4th 974, 997-998 [70 Cal.Rptr.3d 727, 174 P.3d 741, 744]]. If the contractual terms are severable, however, `an isolated instance' of unregulated conduct `does not automatically bar recovery for services that could lawfully be provided without a license.' Ibid." (Preston, supra, 552 U.S. at p. ___, fn. 4 [128 S.Ct. at p. 984, fn. 4].)
[5] In a footnote, the Supreme Court described the appellate process as follows: "From Superior Court an appeal lies in the Court of Appeal. Cal. Civ. Proc. Ann. § 904.1(a) (West 2007); Cal. Rule of Court 8.100(a) (Appellate Rules) (West 2007 rev. ed.). Thereafter, the losing party may seek review in the California Supreme Court, Rule 8.500(a)(1) (Appellate Rules), perhaps followed by a petition for a writ of certiorari in this Court, 28 U.S.C. § 1257. Ferrer has not identified a single case holding that California law permits interruption of this chain of appeals to allow the arbitrator to review the Labor Commissioner's decision. See Tr. of Oral Arg. 35." (Preston, supra, 552 U.S. at p. ___, fn. 6 [128 S.Ct. at p. 986, fn. 6].)
[6] "Section 510 provides that nonexempt employees will be paid one and one-half their wages for hours worked in excess of eight per day and 40 per week and twice their wages for work in excess of 12 hours a day or eight hours on the seventh day of work. Section 1194 provides a private right of action to enforce violations of minimum wage and overtime laws. [Fn. omitted.] That statute states: `Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.' (§ 1194, subd. (a), italics added.) By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the statute are unwaivable. `Labor Code section 1194 confirms "a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers."' (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 340 [17 Cal.Rptr.3d 906, 96 P.3d 194] ....)" (Gentry, supra, 42 Cal.4th at p. 455.)